IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RIKER MCKENZIE-EL,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-20-0917 |
| **AMERICAN SUGAR REFINERY, INC.,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Sheik Riker McKenzie-El ("McKenzie-El" or "Plaintiff") filed this Complaint against Defendant American Sugar Refining, Inc. ("ASR" or "Defendant") (incorrectly identified in the caption of the case and Complaint as American Sugar Refinery, Inc.), asserting claims for discrimination in violation of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C. § 2000 *et seq.*, and Section 1981, 42 U.S.C. § 1981, as well as violations of the Maryland Wage Payment Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501 *et seq.*, and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab & Empl. § 3-401 *et seq.* (*See* ECF No. 1.)[1] Presently pending before this Court is Defendant ASR's Motion to Dismiss for Failure to State a Claim (ECF No. 6).[2] The parties' submissions have been reviewed and no

---

[1] This is the Plaintiff's third lawsuit filed in this Court with respect to his employment issues. Two prior cases were previously dismissed. *McKenzie-El v. Ports of America*, No. ELH-19-1980, 2020 WL 1185193 (D. Md. Mar. 12, 2020); *McKenzie-El v. Internal Revenue Serv.*, No. ELH-19-1956, 2020 WL 902546 (D. Md. Feb. 24, 2020).

[2] Also pending is Plaintiff's Motion to Reopen Case (ECF No. 5) in which the Plaintiff states that this Court dismissed his suit without prejudice on August 14, 2020. This Court did not dismiss the Plaintiff's suit as he alleges. His Motion is therefore DENIED AS MOOT.

1

hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the Defendant ASR's Motion to Dismiss (ECF No. 6) is GRANTED and this case is DISMISSED.

## BACKGROUND

This Court accepts as true the facts alleged in the Plaintiff's Complaint (ECF No. 1). *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). The Plaintiff McKenzie-El is an African American and Asiatic male resident of Baltimore County, Maryland. (ECF No. 1 ¶ 10.) He is a member of Local 333, a union, which operates as a local affiliate of the International Longshoremen's Association ("ILA"), and has been employed since February 2019 by Defendant ASR, which is a member of the Steamship Trade Association of Baltimore. (*Id.* ¶¶ 11, 12, 14.) The relationship between ASR as an employer and McKenzie-El as an employee and a member of Local 333 is governed by a collective bargaining agreement. (*Id.* ¶ 12.) The Plaintiff alleges that on or about October 1, 2018, the contractual rate for his position as Foreman was scheduled to increase by $4.50 an hour with an additional $1.50 pay differential for his additional duties of overseeing a work site. (*Id.* ¶ 38.) He alleges that he never received this pay increase or the pay differential. (*Id.*) He also claims that since March 2019 he has been making complaints to ASR about this issue but that nothing has been done to remedy the issue. (*Id.* ¶ 50.)

In January 2019, McKenzie-El expressed interest in a vacancy for the ILA Foreman, Vessel Operations Supervisor position. (*Id.* ¶¶ 39-40.) He claims that he should have been awarded this position based purely on his seniority pursuant to the terms of the collective bargaining agreement. (*Id.* ¶ 41.) However, he was asked to formally interview for the position

in February 2019. (*Id.* ¶ 42.) Nevertheless, after this interview, McKenzie-El was in fact awarded the position. (*Id.*) Until McKenzie-El's appointment, Andre Womack had been temporarily serving in the Vessel Operations Supervisor position. (*Id.* ¶ 43.) McKenzie-El alleges that Womack lacked the experience this position required, and that his temporary appointment suggested that the Eric Zollars, the Superintendent and Raw Sugar Manager, favored Womack. (*Id.* ¶¶ 43, 44.) The Plaintiff asserts that he observed this preference shortly after beginning his work as Foreman. (*Id.* ¶ 46.) He claims that Zollars tried to "usurp" his authority and status by making "concerted efforts" to get Womack to complete McKenzie-El's tasks and responsibilities. (*Id.* ¶ 47.) Meanwhile, Zollars would request that McKenzie-El complete assignments outside the scope of his position description. (*Id.* ¶ 49.)

Sometime in October 2019, the Plaintiff claims he raised safety concerns with respect to crane operations at the ASR plant. (*Id.* ¶ 51.) He also alleges that on October 12, 2019, he slipped and fell out of a chair around 8:30 a.m. (*Id.* ¶ 52.) Pursuant to required protocol, McKenzie-El reported the incident to Superintendent George Guthrie, who asked him to submit a urine sample for purposes of drug testing in accordance with the union and trade association's industry drug and alcohol policy. (*Id.* ¶¶ 52-53.) McKenzie-El claims that on that same day, ASR refused to give him permission to attend a Naturalization Ceremony for Moorish America, a religious association of which he claims to be a recognized member. (*Id.* ¶¶ 10, 54.) He further claims that a Christian co-worker has been excused from work responsibilities on Sundays for religious reasons. (*Id.* ¶ 54.)

On December 28, 2019, McKenzie-El claims that he reported another workplace safety issue to Human Resources after his coworker Teron Matthews told him about an incident

which occurred a few days earlier. (*Id.* ¶¶ 55-57.) He claims that a few hours after he made this report, he was removed from the work schedule on the basis of Zollars' allegedly false accusation that he was late that day. (*Id.* ¶ 58.) He was then issued a written warning by Zollars pursuant to the collective bargaining agreement, which included more "false allegations" regarding his performance and conduct. (*Id.*) Later that day, the Plaintiff was again allegedly denied the opportunity to attend a religious ceremony. (*Id.* ¶ 59.)

On January 6, 2020, the Plaintiff filed a charge with the Baltimore Field Office of the U.S. Equal Employment Opportunity Commission ("EEOC"), claiming race, national origin, and age discrimination and retaliation. (*Id.* ¶ 7.) Very quickly the EEOC determined that there was no reasonable cause to believe discrimination occurred. (*Id.* ¶ 8.) Accordingly, McKenzie-El received a right-to-sue letter from the EEOC on January 9, 2020. (*Id.*) He then had 90 days after receipt of this letter to file suit, 42 U.S.C. § 2000e-5(f)(1), and on April 4, 2020, just before the expiration of this 90-day period, he filed this action.

## STANDARD OF REVIEW

The Defendant ASR moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), under which the Plaintiff's pleading is subject to dismissal if it "fails to state a claim upon which relief can be granted." Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains,

5

gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). Accordingly, in ruling on Defendant's Motion to Dismiss, this Court will consider Plaintiff's EEOC Charge (Ex. 2, ECF No. 6-4). *See Bowie v. Univ. of Maryland Med. Sys.*, No. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint.") (citations omitted).

## ANALYSIS

### I.  Counts 1 and 2

In Counts 1 and 2 of his Complaint the Plaintiff alleges discrimination on the basis of race and national origin, respectively, in violation of Title VII of the Civil Rights Act of 1964. (ECF No. 1.) To assert a Title VII claim in federal court, a plaintiff must first exhaust his administrative remedies. *See Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1851 (2019); *McCray v. Md. Dep't of Transp.*, 662 F. App'x 221, 224 (4th Cir. 2016). To exhaust, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days of when "the alleged unlawful employment practice occured." 42 U.S.C. § 2000e-5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). However, Maryland is a deferral state,[3] therefore, a claim must instead be filed no more than 300 days after the alleged unlawful

---

[3] A deferral state is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2). Maryland is classified as a deferral state due to the Maryland Commission on Human Relations, a state agency that is capable of providing relief from discrimination.

employment practice. *See Garnes v. Maryland*, No. RDB-17-1430, 2018 WL 276425, at *4 n.8 (D. Md. Jan. 3, 2018); *see also Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008).

Upon receiving a charge, the EEOC must notify the employer and investigate the allegations. 42 U.S.C. § 2000e-5(b). If the EEOC finds "reasonable cause" to believe the charge is true, the EEOC must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* If the EEOC cannot achieve a voluntary settlement, it may "bring a civil action" against the employer in court. *Id.* § 2000e-5(f)(1). On the other hand, where the EEOC concludes there is "n[o] reasonable cause to believe that the charge is true," Title VII directs the EEOC to dismiss the charge and notify the complainant of his right to sue in court. *Id.* § 2000e-5(b), f(1). This notice is commonly called a "right-to-sue letter." *See, e.g.*, *Laber v. Harvery*, 438 F.3d 404, 416 (4th Cir. 2006).

The Supreme Court recently held that a plaintiff's failure to exhaust administrative remedies does not divest the court of jurisdiction. *Davis*, 139 S. Ct. at 1846. Rather, exhaustion is a "claim-processing rule," and it is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'" *Id.* (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). Although a defendant may waive arguments related to administration exhaustion, if the defendant asserts objections in a timely fashion such arguments may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg., Inc.*, No. RDB-18-334, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing the import of *Davis*).

The Defendant ASR urges this Court to dismiss McKenzie-El's Title VII claims for race discrimination (Count 1) and national origin discrimination (Count 2), arguing that the claims fall outside the scope of his administrative charge before the EEOC, and therefore, that he failed to adequately exhaust his administrative remedies. When a plaintiff brings a charge with the EEOC, that charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). This requirement ensures that the employer is put on notice of its employee's claims and is afforded an opportunity to resolve them out of court. *Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir. 2005). In a subsequent suit, plaintiffs may only advance those claims which are "reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Mindful that complainants typically advance EEOC charges without the assistance of counsel, courts afford their scope a liberal construction. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citation omitted). Nevertheless, courts may not permit plaintiffs to assert one type of discrimination in an EEOC charge and later pursue other types of discrimination in formal litigation. *Id.*

In this case, the Complaint (ECF No. 1) asserts acts of alleged disparate treatment that the Plaintiff did not include in his underlying Charge (Ex. 2, ECF No. 6-4). For example, the Complaint alleges that ASR discriminated against the Plaintiff by making efforts to get his co-worker, Andre Womack, to complete McKenzie-El's own tasks and responsibilities; requesting McKenzie-El complete assignments outside the scope of his position; and issuing him a warning. (ECF No.1 ¶¶ 43-50, 58.) The Plaintiff's Charge does not allege any such

8

conduct. Similarly, the Charge asserts that the alleged discrimination took place between October 12, 2019 and December 28, 2019 (*see* ECF No. 6-4), while the Complaint references events which occurred before October 12, 2019 (*see* ECF No. 1 ¶¶ 38-50) and after December 28, 2019 (*see* ECF No. 1 ¶ 60). Further, while the Plaintiff's Opposition states that the Plaintiff made allegations of discrimination in hiring and promotion in his Complaint (ECF No. 9-1 at 11), no such allegations are made in the underling Charge.

In an earlier lawsuit filed by McKenzie-El, this Court dismissed his claims for failure to hire and failure to promote due to his failure to exhaust administrative remedies, stating "even with a generous construction of the narrative in the EEOC Charge, it contains no facts supporting a claim for discriminatory hiring or promotion." *McKenzie-El v. Ports of Am.*, No. ELH-19-1980, 2020 WL 1185193, at *12 (D. Md. Mar. 12, 2020). This case is similarly deficient. A "plaintiff has failed to exhaust administrative remedies where a charge of discrimination references 'different time frames, actors, and discriminatory conduct' than the allegations found in a complaint.'" *Wright v. Kent Cty. Dep't of Soc. Servs.*, No. ELH-12-3593, 2014 WL 301026, at *11 (D. Md. Jan. 24, 2014) (quoting *Chacko*, 429 F.3d at 506)). Thus, to the extent that McKenzie-El's claims are based on these events referenced in the Complaint and not included in the Charge, the Plaintiff has failed to exhaust his administrative remedies with respect to Counts 1 and 2.

Additionally, in a deferral state such as Maryland, a plaintiff must file his claim for unlawful employment practice no more than 300 days after the alleged conduct took place. *See Garnes*, 2018 WL 276425, at *4 n.8. Alleged discriminatory acts which occurred more than 300 days prior to the filing of a charge may not be challenged under Title VII. *Perkins v. Int'l*

*Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019) (dismissing Title VII "disparate treatment claims involving conduct that occurred more than 300 days" prior to the filing of the plaintiff's charge). In this case, the Plaintiff filed his Charge no earlier than January 6, 2020, the date on which he signed his Charge. (*See* Ex. 2, ECF No. 6-4.) Accordingly, only allegations of purported discriminatory conduct that occurred on or after March 12, 2019 (300 days prior to January 6, 2020) are timely under Title VII. Therefore, to the extent that McKenzie-El's Title VII claims are based on any conduct that occurred prior to March 12, 2019, the claims are untimely. *See Perkins*, 936 F.3d at 207 (affirming dismissal of claims based on conduct that occurred more than 300 days before filing of charge).

Finally, even if the Plaintiff adequately exhausted his administrative remedies or filed his charge in a timely manner, the Plaintiff's Complaint fails to state a claim upon which relief can be granted. As the United States Court of Appeals for the Fourth Circuit explained in *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017), a plaintiff may establish discrimination under Title VII by showing direct or circumstantial evidence that the plaintiff's status in a protected class was a motivating factor in an adverse employment action, or by relying on the burden shifting scheme established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Where, as here, the record contains no direct evidence of discrimination, a plaintiff's claims must be analyzed under the burden-shifting scheme established in *McDonnell Douglas*. *See Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000). Under this framework, the plaintiff must first make out a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he was subjected to

10

an adverse employment action; and (4) "the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination' [which can be] met if 'similarly-situated employees outside the protected class received more favorable treatment.'" *Swaso*, 698 F. App'x. at 747 (quoting *Adams v. Trs. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011)); *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)). Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to produce evidence that the adverse employment action was taken "for a legitimate, nondiscriminatory reason." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000). Then, the plaintiff is "afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

McKenzie-El has failed to plead a *prima facie* case of discrimination in either Count 1 or Count 2. First, with respect to Count 2, the Plaintiff has not specifically pled his national origin. Nowhere in the Complaint does McKenzie-El identify his national origin. Count 2 only refers to his race. Similarly, in *Waiters v. Science Applications International Corporation*, No. C/A 2:17-3227-BHH-BM, 2019 WL 5874132, at *8 (D.S.C. May 10, 2019), the plaintiff's complaint only made reference to "national origin" in the sense that he stated that his claim was "based on his race, color or national origin." The plaintiff presented no factual allegations with respect to what national origin he claims. *Id.* The court held that he failed to state a claim for relief under Title VII. *Id.* In this case, the Plaintiff's claim under Count 2 fails for the same reason.

In this case in both Counts 1 and 2, McKenzie-El also fails to allege any facts to suggest that his job performance was satisfactory.  The Complaint does not provide even the assertion that his work was satisfactory, let alone any facts to support such an allegation.  As this Court has consistently noted, where a plaintiff does not plead facts reflecting that he was performing his work satisfactorily, he cannot plead his *prima facie* case.  *See Holloway v. Maryland*, No. RDB-20-0377, 2020 WL 4582705, at *5 (D. Md. Aug. 10, 2020); *Johnson v. United States Parcel Serv.*, RDB-14-4003, 2015 WL 4040419, at *8 (D. Md. June 20, 2015); *Lee v. Safeway, Inc.*, No. RDB-13-3476, 2014 WL 4926183, at *9 (D. Md. Sept. 30, 2014).

The Plaintiff's Complaint also fails to allege an adverse employment action in both Counts 1 and 2.  The Complaint states that (1) after McKenzie-El became Foreman, his supervisor tried to get another employee to complete his tasks and responsibilities, while the Plaintiff was assigned tasks "outside the scope of his position" (ECF No. 1 ¶¶ 47-49); (2) he was required to submit a urine sample for drug testing pursuant to industry drug and alcohol policy after he fell out of a chair (*Id.* ¶¶ 52-53); (3) he was not allowed to attend two religious ceremonies (*Id.* ¶¶ 54, 59); and (4) he was issued a warning, which he claims was based on false allegations (*Id.* ¶ 58).[4]  None of this alleged conduct constitutes an adverse employment action.

First, the Complaint does not offer any facts regarding the allegations that his supervisor reassigned his tasks and responsibilities.  Furthermore, to the extent McKenzie-El is complaining about being assigned additional work, such a claim does not constitute an adverse employment action.  *See, e.g.*, *Peters v. Wal-Mart Stores East, LP*, 512 Fed. App'x 622,

---

[4] The Plaintiff's Complaint also alleges that ASR preferred promoting Caucasian employees and hindered the promotional opportunities for African American employees like himself.  (ECF No. 1 ¶ 1.)  However, the Complaint does not assert a failure to promote claim in any of the five counts, nor does it allege any facts that suggest there was some position for which McKenzie-El was qualified but did not receive an appointment.

627 (7th Cir. 2013) ("additional work assignments . . . are not, without more, . . . adverse employment actions"); *Johnson v. Aluminum Co. of America*, 397 F. Supp. 2d 688, 697 (M.D.N.C. 2005), *aff'd*, 205 Fed. App'x 152 (4th Cir. 2006) (plaintiff alleged he was given extra work but did not explain how the extra work altered the "terms, conditions or benefits" of his employment). Second, requiring the Plaintiff to take a drug test does not constitute an adverse employment action either. *See, e.g., Liggins v. G.A. & F.C. Wagman, Inc.*, No. 5:18-cv-38, 2019 WL 4039635, at *3 n.4 (W.D. Va. Aug., 27, 2019) (noting that magistrate judge correctly held that "a drug test, . . . performed pursuant to an established company policy, does not rise to the level of an adverse employment action for which the anti-discrimination provision of Title VII . . . provides relief"); *Sturdivant v. City of Salisbury, N.C.*, No. 1:09-CV-468, 2011 WL 65970, at *5 (M.D.N.C. Jan. 10, 2011) (requiring plaintiff to submit to an alcohol and drug test after an accident was not an adverse employment action under Title VII). Third, the Fourth Circuit held in *Ali v. Alamo Rent-A-Car, Inc.*, 8 Fed. App'x 156, 158-59 (4th Cir. 2001), that the religious accommodation provision of Title VII does not affect the basic statutory requirement that a plaintiff must show an adverse employment action. In other words, if McKenzie-El had alleged religious discrimination on the basis of ASR's alleged denial of religious accommodation (which he does not), he would still be required to allege an adverse employment action to survive a motion to dismiss. *See Somers v. Equal Emp't Opportunity Comm'n*, No. 6:13-cv-00257-MGL-JDA, 2014 WL 12799324, at *4 (D.S.C. Feb. 21, 2014), *aff'd* 589 Fed. App'x 178 (4th Cir. 2014). Fourth, "reprimands, warnings, and poor performance evaluations, by themselves, ordinarily do *not* [ ] rise to the level of an adverse employment action." *Madock v. McHugh*, No. ELH-10-02706, 2011 WL 3654460, at *16 (D. Md. Aug. 18,

13

2011). The warning simply did not affect the terms, conditions, or benefits of the Plaintiff's employment. *See Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 706 (D. Md. 2003).

With respect to the final element of the *prima facie* case, the Plaintiff's claims in Count 1 and Count 2 also fail to allege any facts to show that similarly situated employees outside his protected class were treated more favorably. The Complaint states that similarly situated white employees were treated more favorably than McKenzie-El and "were not subjected to the same, similar, or any adverse treatment as Plaintiff." (ECF No. 1 ¶¶ 81, 90.) The Complaint does not, however, allege any facts to support such allegations. The Complaint refers to a single employee, Andre Womack, but McKenzie-El does not allege Mr. Womack's national origin or race,[5] and does not allege whether he was similarly situated to the Plaintiff. (*Id.* ¶ 43.) A conclusory allegation about similarly situated employees is insufficient to state a claim for discrimination. *See Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010), *aff'd on different grounds*, 132 S. Ct. 1327 (2012); *Holloway*, 2020 WL 4582705, at *5; *Lewis v. Antwerpen Hyundai of Clarksville*, No. RDB-18-1393, 2018 WL 5809708, at *7 (D. Md. Nov. 5, 2018).

To the extent McKenzie-El's claims in Counts 1 and 2 are based on facts not alleged in his Charge, and to the extent his claims in those Counts are based on facts which occurred before March 12, 2019, such claims must be dismissed. Further, even if the Plaintiff properly exhausted his administrative remedies and filed his Charge in a timely fashion, the Plaintiff still fails to allege a *prima facie* case under Title VII. Both Counts 1 and 2 fail to state a claim for relief.

---

[5] Defendant ASR claims that Womack is in fact African American. (*See* ECF No. 6-1 at 24.)

14

**II.     Counts 3 and 4**

In Counts 3 and 4 of his Complaint the Plaintiff seeks to recover damages for the Defendant's "willful failure to pay overtime wages and fringe benefits" in violation of the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* (ECF No. 1 ¶¶ 103-116.)  Specifically, Counts 3 and 4 allege that both the MWHL and MWPCL require payment of overtime wages and that the Defendant knowingly and willfully failed to pay such wages. (*See* ECF No. 1 ¶¶ 105-106, 112 (citing Md. Code Ann., Lab. & Empl. §§ 3-502, 3-415, and 3-420).)  However, his Complaint alleges absolutely no facts regarding overtime: he asserts no facts to suggest when he allegedly worked more than forty hours in a week and no facts regarding any alleged failure to pay him overtime in a timely manner.  Looking to the facts actually alleged in the Complaint, the Defendant suggests that perhaps McKenzie-El instead meant to argue that the Defendant violated Maryland law when he allegedly did not receive a pay increase, which was required by the applicable collective bargaining agreement when he was made Foreman.  (ECF No. 6-1 at 27 (pointing to Plaintiff Complaint's ECF No. 1 ¶¶ 38).)[6]

First, ASR notes that claims under MWHL and MWPCL are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  "Section 301 of the LMRA expresses a federal policy, mandated by Congress, that federal law be applied in

---

[6] The Plaintiff failed to respond to any of ASR's arguments with respect to Counts 3 and 4 in his Opposition (ECF No. 9-1), effectively conceding the Defendant's points. *Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 206) ("In failing to respond to [the defendant's] argument, [the plaintiff] concedes the point.") However, this Court still proceeds to the merits of the Defendant's arguments.

addressing disputes arising out of labor contracts," such as collective bargaining agreements. *Clark v. Newport News Shipbuilding & Dry Dock Co.*, 937 F.2d 934, 936 (4th Cir. 1991) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985) (internal citations omitted)). Thus, in furtherance of this federal policy, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," the claim is preempted by federal law. *Allis-Chambers*, 471 U.S. at 220. State law does not provide an independent source of private rights to enforce collective bargaining contracts. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (citations omitted). If the Plaintiff is claiming that he was not paid in accordance with the applicable collective bargaining agreement, his claim clearly requires an interpretation of such agreement. Accordingly his state law claims, which "require[] the interpretation of a collective-bargaining agreement," are preempted. *Davis v. Bell Atlantic-West Virginia*, 110 F.3d 245, 248 (4th Cir. 1997).

Second, McKenzie-El's claims are untimely. Actions pursuant to Section 301 of the LMRA are subject to a six-month statute of limitations prescribed in Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983); *Foy v. Giant Food, Inc.*, 298 F.3d 284, 291 (4th Cir. 2002) (stating that "a six-month statute of limitations applies to actions under the [LMRA] brought by an employee against his employer for breach of a collective bargaining agreement"). If the Plaintiff, as he alleges, became aware of the Defendant's alleged breach of the collective bargaining agreement in March 2019, he waited more than six months to file his claim on April 7, 2020. (ECF No. 1 ¶ 50.) Accordingly, any LMRA claim against ASR is untimely.

Finally, ASR notes McKenzie-El has not shown that the union breached its "duty of fair representation" when he made attempts to remedy the pay problems, as required for a plaintiff to prevail on a claim under Section 301 of the LMRA. *See Thompson v. Aluminum Co. of American*, 276 F.3d 651, 656 (4th Cir. 2002). The standard for proving that a union breached its duty of fair representation is "a very difficult standard to meet," *Bruce v. Local 333, In'l Longshoremen's Ass'n AFL-CIO*, 189 F. Supp. 2d 282, 288 (D. Md. 2002), and the Plaintiff has not alleged that the union breached this duty, nor that he even raised the issue regarding his pay *with the union* via grievance or otherwise. Therefore, he cannot meet the difficult standard.

In sum, even liberally construing the Plaintiff's Complaint to assert factual allegations in support of violations of the MWHL and MWPCL in Counts 3 and 4, the Plaintiff cannot seek relief through state law for breach of the collective bargaining agreement. Further, if this Court again liberally construes his Complaint to assert a claim under the LMRA instead, his claim would still fail due to its untimely nature and his failure to plead a breach of the duty of fair representation on behalf of the union. For these reasons, his claims under Count 3 and 4 must be dismissed.

**III. Count 5**

Count 5 alleges race discrimination in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, which prohibits racial discrimination in contracts. (ECF No. 1 ¶¶ 117-127.) McKenzie-El alleges that because of his race (African American and Asiatic), he was subjected to the unlawful conduct and adverse actions alleged throughout his Complaint under Section 1981. (*Id.* ¶ 119.) Although *McDonnell Douglas* was a Title VII case, the same burden-shifting framework has traditionally been used to evaluate claims of race

discrimination in employment under Section 1981 where the plaintiff does not provide any direct evidence of discrimination. *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004); *Thomas v. Delmarva Power & Light Co.*, No. RDB-15-433, 2017 WL 3216926, at *3 (D. Md. July 28, 2017), *aff'd*, 715 Fed. App'x 301 (4th Cir. 2018). However, in *Comcast Corporation v. National Association of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020), the Supreme Court clarified that *McDonnell Douglas* does not address the causation standard relevant for claims of discrimination brought under Section 1981. The Court clearly held that a plaintiff asserting a Section 1981 claim must "initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Id.* at 1019. As this Court explained above, McKenzie-El has not pled any facts sufficient to present a discrimination claim under Title VII. He, therefore, has not pled facts sufficient to meet the more stringent causation standard required by Section 1981. Count 5 must be dismissed.

## CONCLUSION

For the foregoing reasons, the Defendant ASR's Motion to Dismiss for Failure to State a Claim (ECF No. 6) is GRANTED, and the Plaintiff McKenzie-El's Complaint (ECF No. 1) is DISMISSED.

A Separate Order follows.


Dated: December 21, 2020

 /s/  
Richard D. Bennett  
United States District Judge